United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NORTHWEST ADMINISTRATORS, INC.,

        Plaintiff,

  v.

SAN BRUNO GARBAGE CO., INC.,

        Defendant.

_____/

No. C-06-4961 MMC

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

(Docket Nos. 12, 20)

      Before the Court are two motions, each filed April 20, 2007: (1) plaintiff Northwest Administrators, Inc.'s ("Northwest") motion for summary judgment, and (2) defendant San Bruno Garbage Co., Inc.'s ("San Bruno") cross-motion for summary judgment.  San Bruno filed opposition to Northwest's motion, to which Northwest filed a reply.  Northwest filed opposition to San Bruno's cross-motion, to which San Bruno filed a reply.  The matter came on regularly for hearing on June 1, 2007.  Michael Carroll appeared on behalf of Northwest and Michael Hoffman appeared on behalf of San Bruno.  Having considered the papers filed in support of and in opposition to the motions, as well as the arguments of counsel at the June 1, 2007 hearing, the Court rules as follows.

**BACKGROUND**

      In the instant action, brought pursuant to § 502 of the Employee Retirement Income

Security Act of 1974 ("ERISA") and § 301 of the National Labor Relations Act ("NLRA"),[1] Northwest contends San Bruno breached a collective bargaining agreement and certain Trust Agreements by failing to make the requisite contributions to the Western Conference of Teamsters Pension Trust Fund ("Fund") on behalf of San Bruno's employees.  (See Compl. ¶ 1.)  Northwest is the administrator of the Fund.  (See id.)  The sole issue raised in the instant motions is whether San Bruno is required, under the relevant agreements, to make contributions to the Fund on behalf of its employees who are members of the Sanitary Truck Drivers and Helpers Union Local 350 ("Local 350") while such employees are receiving workers' compensation payments.

San Bruno and Local 350 are parties to a collective bargaining agreement ("CBA").  (See Sander Decl. ¶ 3 and Ex. 1.)[2]  The CBA pertinent to the instant action covers the period September 1, 2000 through August 31, 2005.  (See id.)  The CBA, as initially drafted, provided that San Bruno "shall contribute to the [Fund], on a straight-time hourly basis, starting with the first compensable hour to a maximum of 173 hours per employee each month[.]" (See id. Ex. 1 at 379.)  The CBA further provided that "[f]orty (40) hours of work shall constitute the maximum straight time work week," excluding "the number of hours of work any employee may perform at overtime wage rates."  (See id. at 380.)  The CBA did not expressly address whether San Bruno must pay contributions to the Fund for injured employees who are receiving workers' compensation payments.

In a letter dated April 26, 2001, the Western Conference of Teamsters Pension Trust

---

[1] ERISA § 502 provides, inter alia, that a fiduciary may bring suit to enforce an employer's obligation to make contributions to a fund.  See 29 U.S.C. §§ 1132(g)(2), 1145.  Section 301 of the NLRA provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."  See 29 U.S.C. § 185.  Recovery of delinquent fund contributions "is available under either statute."  See Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450, 827 F.2d 1324, 1327 (9th Cir. 1987).

[2] Rather than attaching exhibits to accompanying declarations, the parties have submitted a "common set of exhibits."  (See Notice of Manual Filing.)  Accordingly, the Court frequently will cite herein to exhibits without also citing to a declaration.

1   ("Trust") informed San Bruno and Local 350 that the CBA's "monthly maximum on pension

2   contributions of 173 hours" was not acceptable to the Trust because some months include

3   more than 173 hours of straight time.  (See Ex. 2.)  The Trust noted that, pursuant to its

4   guidelines, a CBA will not be acceptable to the Trust if it contains:  "Provisions that permit

5   contributions on a basis that will produce a contribution less than all straight time hours

6   worked by the employee, provided that for purpose of this rule paid vacation and paid

7   holiday hours shall be included in straight time hours worked."  (See id.)  The Trust set forth

8   therein three alternative examples of "sample language" that would amend the CBA to the

9   Trust's satisfaction.  (See id.)  In July 2001, San Bruno and Local 350 entered into a Letter

10  of Understanding, which amended the CBA by adopting the following language, which is

11  the second of the three acceptable alternatives proposed by the Trust in its April 26, 2001

12  letter:

13          The Employer shall make contributions to the [Fund] on behalf of each
            member of the bargaining unit from the first compensable hour.  Contributions
14          shall be made on all straight-time hours worked to a monthly maximum of 184
            hours per month.
15
            Time paid for but not worked, such as holiday, vacation, and sick pay shall be
16          considered as time worked for the purpose of this section.

17  (See id. at Ex. 3.)  The amended CBA does not expressly address whether San Bruno

18  must pay contributions to the Fund for injured employees who are receiving workers'

19  compensation payments.

20          In 2005, Northwest conducted an audit of San Bruno's books and records for the

21  period December 1, 2003 through October 31, 2004 and determined that San Bruno had

22  underpaid its contributions to the Fund in several respects and, in particular, that San

23  Bruno had failed to pay contributions on behalf of employees who were receiving workers'

24  compensation payments.  (See Calleros Decl. ¶¶ 3, 5-7 and Ex. 11.)  In a letter to the

25  Trust, dated April 20, 2005, San Bruno disputed the contention that the CBA requires

26  contributions on behalf of employees who are receiving workers' compensation payments.

27  (See Ex. 13.)  In a letter dated April 20, 2006, Michael Sander, the Trust's Administrative

28  Manager, denied San Bruno's "appeal" of the finding that San Bruno owed contributions for

3

1    employees who were receiving workers' compensation payments.  (See Ex. 15.)  In a letter

2    dated May 12, 2006, San Bruno appealed Sander's decision to the Board of Trustees of the

3    Fund ("Board").  (See Ex. 16.)  On May 31, 2006, the Board denied the appeal.  (See Ex.

4    18 at 004.)

5         On August 16, 2006, Northwest filed the instant action.

6                                  **LEGAL STANDARD**

7         Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment as

8    to "all or any part" of a claim "shall be rendered forthwith if the pleadings, depositions,

9    answers to interrogatories, and admissions on file, together with the affidavits, if any, show

10   that there is no genuine issue as to any material fact and that the moving party is entitled to

11   judgment as a matter of law."  See Fed. R. Civ. P. 56(b), (c).  Material facts are those that

12   may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

13   248 (1986).  A dispute as to a material fact is "genuine" if the evidence is such that "a

14   reasonable jury could return a verdict for the nonmoving party."  See id.  The Court may not

15   weigh the evidence.  See id. at 255.  Rather, the nonmoving party's evidence must be

16   believed and "all justifiable inferences must be drawn in [the nonmovant's] favor."  See

17   United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989)

18   (en banc) (citing Liberty Lobby, 477 U.S. at 255).

19        The moving party bears the initial responsibility of informing the district court of the

20   basis for its motion and identifying those portions of the pleadings, depositions,

21   interrogatory answers, admissions and affidavits, if any, that it contends demonstrate the

22   absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317,

23   323 (1986).  Where the nonmoving party will bear the burden of proof at trial, the moving

24   party's burden is discharged when it shows the court there is an absence of evidence to

25   support the nonmoving party's case.  See id. at 325.

26        Where the moving party "bears the burden of proof at trial, he must come forward

27   with evidence which would entitle him to a directed verdict if the evidence went

28   uncontroverted at trial."  See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992)

4

1   (citations omitted); see also Fontenot v. Upjohn, 780 F.2d 1190, 1194 (5th Cir. 1986)

2   (holding when plaintiff moves for summary judgment on an issue upon which he bears the

3   burden of proof, "he must establish beyond peradventure all of the essential elements of

4   the claim . . . to warrant judgment in his favor.") (emphasis in original).

5        A party opposing a properly supported motion for summary judgment "may not rest

6   upon the mere allegations or denials of [that] party's pleading, but . . .  must set forth

7   specific facts showing that there is a genuine issue for trial."  See Fed. R. Civ. P. 56(e); see

8   also Liberty Lobby, 477 U.S. at 250.  The opposing party need not show the issue will be

9   resolved conclusively in its favor.  See Liberty Lobby, 477 U.S. at 248-49.  All that is

10  necessary is submission of sufficient evidence to create a material factual dispute, thereby

11  requiring a jury or judge to resolve the parties' differing versions at trial.  See id.

12                                   **DISCUSSION**

13        **A. Standard of Review**

14        As an initial matter, the parties dispute the degree of deference, if any, the Court

15  must give to the Trust's conclusion that the CBA requires San Bruno to make contributions

16  on behalf of employees who are receiving workers' compensation payments.

17        In support of its argument that the Court should review the Trust's construction of

18  the CBA for abuse of discretion, Northwest relies largely on cases in which ERISA benefits

19  determinations were at issue.  A court reviews a denial of benefits for abuse of discretion,

20  however, only where "the benefit plan gives the administrator or fiduciary discretionary

21  authority to determine eligibility for benefits or to construe the terms of the plan."  See

22  Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Here, there is no

23  analogous contractual language granting the Trust discretionary authority to construe the

24  terms of the CBA.  In particular, the CBA itself contains no language addressing the

25  manner in which San Bruno and the Trust are to resolve a dispute between themselves

26  with respect to San Bruno's obligations under the CBA to make contributions to the Fund.

27        Although Northwest relies on language from the Agreement and Declaration of Trust

28  of the Fund ("Trust Agreement"), to which agreement San Bruno and Local 350 are parties,

(see Exs. 4-5), such reliance is misplaced.  For example, although Article V § 1(c) of the Trust Agreement grants the Trust "the power . . . to . . . [c]onstrue the provisions of [the Trust] Agreement . . . and the Pension Plan and the terms used therein," and further provides that "any construction adopted by the Trustees in good faith shall be binding upon the Unions, the Employers, the Employees, and their beneficiaries," (see Ex. 5 Art. V § 1(c) at 7), such language does not grant the Trust discretionary authority to construe the provisions of the CBA.  Likewise, although the Trust Agreement authorizes the Trustees to "develop procedures to be followed by Employers in reporting contributions made on behalf of Employees," to "develop procedures for the establishment of credited service of Employees, including the means of affording Employees and Employers the opportunity to object thereto, and to establish such facts conclusively," and to "make determinations which shall be final and binding upon all parties as to the rights of any Employee and any beneficiary to benefits, including any rights any individual may have to request a hearing with respect to any such determination," (see id. Art. VII(a), (b), and (d) at 10), such language does not purport to grant the Trust discretion to interpret the language of the CBA.

Northwest's reliance on Clark v. Washington Teamsters Welfare Trust, 8 F.3d 1429 (9th Cir. 1993) and Board of Trustees of the Watsonville Frozen Food Welfare Trust Fund v. California Cooperative Creamery, 877 F.2d 1415 (9th Cir. 1989) likewise is misplaced.  In Clark, the Ninth Circuit reviewed a trust's interpretation of a CBA for abuse of discretion because the trust agreement included the following provision:  "Any questions arising in connection with the performance of the provisions of this Trust Agreement not hereto specifically provided for shall be left to the sole discretion of the Trustees."  See id.  The Ninth Circuit held the issue before it "pose[d] a question arising in connection with the performance of the provisions of the Trust, and questions of the interpretation of such language are not specifically provided for."  See id.  Here, however, there is no "catch-all" discretionary language in the Trust Agreement comparable to that at issue in Clark.  In California Cooperative Creamery, the trust agreement and CBA at issue therein were

1    treated differently with respect to deference.  Although the Ninth Circuit reviewed the trust's

2    construction of the trust agreement for abuse of discretion, see id. at 1420, it did not defer

3    to the trust's construction of the CBA, see id. at 1425-27.  Here, as noted, the issue is not

4    one of construction of a trust agreement, but construction of a CBA.

5          As San Bruno observes, the Ninth Circuit, in ERISA actions, repeatedly has held

6    construction of a CBA is a matter of law that is reviewed de novo, albeit without expressly

7    stating that a trust's construction of a CBA is not entitled to deference.  See, e.g., Santa

8    Monica Culinary Welfare Fund v. Miramar Hotel Corp., 920 F.2d 1491, 1493 (9th Cir. 1990)

9    (citing Operating Engineers Pension Trusts v. B & E Backhoe, Inc., 911 F.2d 1347, 1351

10   (9th Cir. 1990)) ("We review de novo the construction of collective bargaining agreements");

11   Operating Engineers, 911 F.2d at 1351 (holding "district court's interpretation of a

12   contractual provision is a question of law reviewed de novo"); Pierce County Hotel

13   Employees and Restaurant Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450, 827

14   F.2d 1324, 1327 (9th Cir. 1987) (interpreting de novo CBA in ERISA collection action for

15   unpaid contributions).  As one district court has observed, "[w]hile it makes sense for an

16   employer to grant broad authority to fund trustees to resolve disputes between its

17   employees and the fund, it makes little sense for an employer to do the same when it

18   comes to determining the employer's own liabilities to the fund[.]" See Roca v. Westbury

19   Transport Inc., 19 F. Supp. 2d 44, 50 (E.D.N.Y. 1998).  Because such discretion may

20   permit a trust "to increase the size of contribution obligations of employers to levels greater

21   than they or the union, the original parties to the bargaining agreement, had agreed to or

22   contemplated[,] [o]nly an explicit provision in the CBA should permit such a result."  See id.

23   at 50.

24         Here, as there is no provision in the CBA or the Trust Agreement that grants

25   Northwest discretionary authority to interpret the terms of the CBA, the Court will interpret

26

27

28

                                          7

1    the CBA de novo.[3]

2        **B. Construction of CBA**

3        "To ascertain the meaning of [a] collective bargaining agreement, [courts] first

4    examine its express written terms."  <u>Northwest Administrators, Inc. v. B.V. & B.R., Inc.</u>, 813

5    F.2d 223, 225 (9th Cir. 1987).  As noted, prior to the adoption of the Letter of

6    Understanding, Article C § 4(b) of the CBA provided that San Bruno was required "to

7    contribute to the [Fund], on a straight-time hourly basis, starting with the first compensable

8    hour to a maximum of 173 hours per employee per month."  (See Ex. 1 Art. C § 4(b).)  The

9    July 2001 Letter of Understanding between San Bruno and Local 350 amended that

10   language to provide that "[c]ontributions shall be made on all straight-time hours worked to

11   a monthly maximum of 184 hours per month," and that "[t]ime paid for but not worked, such

12   as holiday, vacation and sick pay shall be considered as time worked[.]" (See Ex. 3.)  The

13   effect of the amendment was to change San Bruno's obligation with respect to the <u>number</u>

14   of hours per month for which contributions were required; it did not change San Bruno's

15   obligation with respect to the <u>type</u> of hours for which contributions were required.  Nothing

16   in the amendment itself or the letter in which it was proposed suggests otherwise, (see Ex.

17   2), and, at the June 1, 2007 hearing, Northwest agreed that the obligation under Article C §

18   4(b) with respect to the type of hours for which contributions are required remained

19   unchanged by the Letter of Understanding.

20       As noted, both the CBA as initially drafted and the Letter of Understanding require

21   the employer to make contributions to the Fund for each "compensable hour."  (See Ex. 1

22   Art. C § 4(b); Ex. 3.)  The Court finds the plain meaning of "compensable hour" is an hour

23   for which the employee is paid by the employer, whether or not such employee is at work.

24   Indeed, to the extent the Letter of Understanding seeks to clarify the term, it provides

25   further support for such conclusion.  As noted, the Letter of Understanding includes as

26   _____

27       [3] In light of this ruling, the Court does not reach San Bruno's contention that the
     Trust abused its discretion by conducing a biased review of San Bruno's arguments on
28   appeal.

1   examples of "compensable hours" "[t]ime paid for but not worked, such as holiday,

2   vacation, and sick pay," (see Ex. 3), all of which the CBA expressly requires the employer

3   to pay.  (See Ex. 1 Art. D §§ 3-5.)  There is no evidence that San Bruno is responsible for

4   making workers' compensation payments to its employees.

5          The Court finds unpersuasive Northwest's contention that the first paragraph of

6   Article C § 4 is relevant in interpreting the meaning of Article C § 4(b).  Although the first

7   paragraph of Article C § 4 describes the maximum length of time an employee who is

8   receiving workers' compensation payments will continue to receive benefits "due him . . .

9   under the [CBA]," (see Ex. 1 Art. C § 4), it does not purport to set forth or define those

10  benefits in the first instance.  (See Ex. 1 Art. C § 4 (providing, "If an employee is off work

11  due to illness or injury or on state disability, any benefit, except health and welfare

12  insurance, due him or her under the Agreement shall be paid for a maximum of six (6)

13  months. . . . Any employee being paid under workers' compensation laws is not subject to

14  these limitations.  Benefits to employees being paid under workers' compensation laws

15  shall terminate at the conclusion of the workers' compensation proceeding.")

16  Consequently, such language permits no inference that San Bruno is required to make

17  contributions to the Fund while an employee is receiving workers' compensation payments.

18         The Court thus finds time during which an employee receives workers'

19  compensation payments does not qualify as "compensable hours" under the plain meaning

20  of the CBA and Letter of Understanding.  Accordingly, pursuant to the CBA and the Letter

21  of Understanding, San Bruno has no obligation to make contributions to the Fund while an

22  employee is receiving workers' compensation payments and is not being paid by San

23  Bruno.

24                                    **CONCLUSION**

25         For the reasons set forth above, Northwest's motion for summary judgment is

26  hereby DENIED, and San Bruno's cross-motion for summary judgment is hereby

27  GRANTED.

28         The parties shall appear before the Court on July 6, 2007 at 10:30 a.m. for a further

                                           9

1  case management conference.  No later than June 30, 2007, the parties shall file a joint

2  case management statement setting forth any issues that remain to be resolved in the

3  instant action, and a proposed briefing schedule and/or trial schedule.

4        This order terminates Docket Nos. 12 and 20.

5        **IT IS SO ORDERED.**

6  Dated: June 12, 2007                          MAXINE M. CHESNEY
                                                  United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28